```
IN THE UNITED STATES DISTRICT COURT
  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
KADIATOU TOURE                    )
o/b/o C.B.S., Jr., a minor,       )
                                  )
            Plaintiff,            )
                                  )
     v.                           )    1:18CV590
                                  )
ANDREW M. SAUL,                   )
Commissioner of Social            )
Security,¹                        )
                                  )
            Defendant.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kadiatou Toure, brought this action on behalf of her minor child, C.B.S., Jr., pursuant to the Social Security Act (the "Act"), to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Child Supplemental Security Income ("CSSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 11; see also Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for CSSI on behalf of her child C.B.S., Jr. (Tr. 156-64.) Following denial of that application initially (Tr. 74-85, 99-102) and on reconsideration (Tr. 86-98, 106-12), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 113-15). Plaintiff, proceeding pro se, testified at the hearing. (Tr. 32-64.) The ALJ subsequently ruled that C.B.S., Jr. did not qualify as disabled under the Act. (Tr. 7-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 153-55, 266), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [C.B.S., Jr.] . . . was a school-age child on . . . the date the application was filed, and is currently an adolescent.
>
> 2. [C.B.S., Jr.] has not engaged in substantial gainful activity since . . . the application date.
>
> . . .
>
> 3. [C.B.S., Jr.] has the following severe impairments: seizure disorder, under control; attention deficit hyperactivity disorder [("ADHD")], and oppositional defiant disorder.
>
> . . .
>
> 4. [C.B.S., Jr.] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

> 5. [C.B.S., Jr.] does not have an impairment or combination of impairments that functionally equals the severity of the listings.
>
> . . .
>
> 6. [C.B.S., Jr.] has not been disabled, as defined in the . . . Act, since . . . the date the application was filed.

(Tr. 13-26 (bold font and internal citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and a child under the age of 18 qualifies as disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has

lasted or can be expected to last for a continuous period of not less than 12 months," 20 C.F.R. § 416.906. In resolving such a claim, the ALJ must follow a three-step sequential evaluation process to consider whether a claimant (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets or either medically or functionally equals a listed impairment. 20 C.F.R. § 416.924.

### B. Assignment of Error

In Plaintiff's motion for judgment, she generally seeks reversal of the ALJ's decision finding C.B.S., Jr. not disabled but fails to specifically assign error to any of the ALJ's findings. (See Docket Entry 10 at 1-2.) Plaintiff does note, however, that C.B.S., Jr. "struggles in all area[s] with his classes in school[,] . . . doesn't complete assignments because he struggles to understand[, ] doesn't engage in reading in his classes [or] immerse himself outside of school[ , ] struggles with calculation and computations[, ] take[s ] a very long time to solve simple basic math calculations[, and] gets distracted very easily and suddenly [] will just st[are] off into another zone and hav[e a] seizure." (Id. at 1.) Although Plaintiff's statements reflect her observations of C.B.S., Jr. as an eighth grade student during the 2018 to 2019 school year (i.e., well after the ALJ's decision and relevant period in this case) (id. at 1-2), Plaintiff's pro se filing warrants a liberal construction by the Court, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Accordingly, the Court should interpret Plaintiff's statements as an argument that ALJ erred in

his evaluation of whether C.B.S., Jr. had impairments that functionally equaled a listing.

In order to determine whether a child's impairment(s) functionally equal(s) a listing, the ALJ must consider how the child functions in six different broad areas of functioning (or "domains") "intended to capture all of what a child can or cannot do . . . (I) Acquiring and [U]sing [I]nformation; (ii) Attending and [C]ompleting [T]asks; (iii) Interacting and [R]elating with [O]thers; (iv) Moving about and [M]anipulating [O]bjects; (v) Caring for [One]self; and (vi) Health and [P]hysical [W]ell-[B]eing." 20 C.F.R. § 416.926a(b)(1). A child's impairments functionally equal a listing if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A "marked" limitation "interferes <u>seriously</u> with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). An "extreme" limitation "interferes <u>very seriously</u> with [a child's] ability to independently initiate, sustain, or complete activities," but "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Here, the ALJ found that C.B.S., Jr. had a "less than marked" limitation in Attending and Completing Tasks, Interacting and Relating with Others, and Health and Physical Well-Being, and "no limitation" in Acquiring and Using Information, Moving about and Manipulating Objects, and Caring for Oneself. (<u>See</u> Tr. 20-26.)

The Court should construe Plaintiff's statements that C.B.S., Jr. struggles to understand reading and math, gets distracted easily, and suffers from seizures (see Docket Entry 10 at 1) as an argument that the ALJ erred with respect to his findings in the domains of Acquiring and Using Information, Attending and Completing Tasks, and Health and Physical Well-Being. A careful review of the record, however, confirms that substantial evidence supports the ALJ's findings with respect to those domains.

**1. Acquiring and Using Information**

The ALJ began his evaluation of this domain by reciting relevant portions of the regulatory criteria for Acquiring and Using Information:

> This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community.
>
> . . .
>
> Some examples of difficulties children could have in acquiring and using information are: (i) does not understand words about space, size, or time . . .; (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (e.g., learning to count, reciting ABCs, scribbling); (vi) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematic questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what he means.

(Tr. 19 (citing 20 C.F.R. § 416.926a(g) and Social Security Ruling 09-3p, Title XVI: Determining Childhood Disability – The Functional Equivalence Domain of "Acquiring and Using Information," 2009 WL

396025 (Feb. 17, 2009) ("SSR 09-3p")) (internal citation omitted).)
In turn, SSR 09-3p emphasizes the importance of school records in
analyzing a child's functioning in this domain:

> Because much of a . . . school-age child's learning takes
> place in a school setting, . . . school records are often
> a significant source of information about limitations in
> th[is] domain . . . . Poor grades or inconsistent
> academic performance are among the more obvious
> indicators of a limitation in this domain . . . . Other
> indications in school records that a mental or physical
> impairment(s) may be interfering with a child's ability
> to acquire and use information include, but are not
> limited to[ s]pecial education services, such as
> assignment of a personal aide who helps the child with
> classroom activities in a regular classroom, remedial or
> compensatory teaching methods for academic subjects, or
> placement in a self-contained classroom.

SSR 09-3p, 2009 WL 396025, at *3. The ALJ ultimately found that
C.B.S., Jr. "ha[d] no limitation" in this domain. (Tr. 20
(underscoring omitted).)

The ALJ complied with the above-described regulation and
policy in finding "no limitation" in this domain. (Id.) Despite
Plaintiff's assertion that C.B.S., Jr. struggled to understand
reading and math (see Docket Entry 10 at 1), the ALJ primarily
relied on C.B.S., Jr.'s at or above grade level academic
performance and lack of special education classes to find no
limitation in this domain:

> In a questionnaire dated November 19, 2014, [C.B.S.,
> Jr.'s fourth grade] teacher[ Kelly Grant] indicated
> [C.B.S., Jr. wa]s above or on grade level, receive[d] no
> special education services, d[id] not have an
> Individualized Education Program (IEP) plan, and [wa]s in
> regular education with no special instructions.

(Tr. 20 (internal citation omitted).) The ALJ also credited the
opinions of consultative psychological examiner Dr. Jake Ricketson:

-8-

> . . . Dr. Ricketson reported [C.B.S., Jr.]'s estimated full-scale IQ score equal[ed] 90, falling in the average range of intelligence and [that] he appear[ed] capable of performing simple calculations.

(Id. (internal citation omitted).)[2] Plaintiff has pointed to no evidence that would compel a finding that C.B.S., Jr. suffered a "marked" limitation in Acquiring and Using Information and thus substantial evidence supports the ALJ's finding of "no limitation" in this domain.

## 2. Attending and Completing Tasks

With regard to this domain, the ALJ first recited the regulatory considerations as follows:

> This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time.
>
> . . .
>
> Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from

---

[2] Although not specifically relied on by the ALJ with regard to this domain (see Tr. 20), Plaintiff admitted in a Function Report dated August 25, 2014, that C.B.S., Jr. did not have any limitation in his "ability to progress in learning" (Tr. 171). Moreover, the ALJ properly accorded "significant weight" to the opinions of the state agency psychological consultants (Tr. 18), who each found that C.B.S., Jr. had no limitation in this domain (see Tr. 79, 92). See, e.g., Adams v. Barnhart, Civ. No. 05-134-B-W, 2005 WL 3832408, at *3 n.4 (D. Me. Mar. 6, 2005) (unpublished) ("[T]wo state-agency psychologists found no limitation or less than marked limitations in these domains . . . . The [ALJ] was entitled to rely on the medical evidence provided by the state-agency psychologists." (internal citations omitted)).

activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

(Tr. 20-21 (citing 20 C.F.R. § 416.926(h) and Social Security Ruling 09-4p, Title XVI: Determining Childhood Disability – The Functional Equivalence Domain of "Attending and Completing Tasks," 2009 WL 396033 (Feb. 17, 2009)) (internal citation omitted).)

The ALJ then provided the following rationale for finding a "less than marked" limitation (Tr. 21 (underscoring omitted)) in the domain at issue:

> In a questionnaire dated November 19, 2014, [Ms. Grant] reported [C.B.S., Jr.] ha[d] slight problems in paying attention when spoken to directly, sustaining attention during play/sports activities, carrying out single-step instructions, carrying out multi-step instructions, organizing his own things/school materials, completing class/homework assignments, completing work accurately without careless mistakes and working at a reasonable pace/finishing on time. He ha[d] obvious problems in focusing long enough to finish assigned activity/task, refocusing to task when necessary, waiting to take turns, changing from one activity to another without being disruptive, and working without distracting himself or others. [Ms. Grant] commented he c[ould] work very well independently when he [wa]s on task and focused. If he [wa]s uninterested in the task or confused, he remain[ed] very unfocused throughout. He d[id] react well to a very structured classroom environment. He enjoy[ed] having his own "island" or area in the class where he ha[d] extra room and c[ould] stay focused.
>
> . . . Dr. Ricketson noted that without [C.B.S., Jr.'s] ADHD medications, [Plaintiff] report[ed] that [C.B.S., Jr.] ha[d] combined type symptoms, which include[d] hyperactivity. According to [Plaintiff], [C.B.S., Jr.] [wa]s constantly out of his seat in school, constantly moving and disruptive to the class. [Plaintiff] also reported [C.B.S., Jr.] was without medication at the time of the evaluation. On mental status examination, [he] appear[ed] mildly hyperactive, predominantly becoming

-10-

> fidgety while seated. He d[id] not appear impulsive or inattentive the day of his evaluation while on no medications. His focused attention/concentration appear[ed] average. Dr. Ricketson observed [C.B.S., Jr.] was fidgety, but did not leave his chair and put forth good effort on testing despite being unmedicated.

(Id. (internal citation omitted).)

As noted above, Plaintiff did not expressly challenge the ALJ's above-quoted analysis (see Docket Entry 10 at 1-2), but did contend that C.B.S., Jr. continues to get distracted easily (see id. at 1). However, as the ALJ observed, the opinions of Ms. Grant and Dr. Ricketson show that, although C.B.S., Jr. continued to experience some ADHD symptoms, those symptoms remained under reasonable control (even when not on his medication) during the relevant period in this case. (See Tr. 21, 192, 361-62; see also Tr. 16 (ALJ's discussion of visit with pediatrician Dr. Dale Gertz on January 16, 2014, noting that C.B.S., Jr. "was doing very well on the higher dose of [his ADHD medication], [his] teacher reported improvements and [Plaintiff] agreed, [C.B.S., Jr. ] had no side effects, his grades [we]re very good, and he [wa]s at or above grade level" (citing Tr. 318)). Moreover, the ALJ properly assigned "significant weight" to the opinions of the state agency psychological consultants (Tr. 18), who also found "less than marked" limitation in this domain (Tr. 79, 93). See, e.g., Williams ex rel. R.M. v. Astrue, No. 1:11CV2135, 2012 WL 3283427, at *8 (N.D. Ohio Aug. 10, 2012) (unpublished) (describing state agency psychologist's "opinion that the claimant was less than markedly limited in attending and completing tasks . . . [a]s

medical expert opinion evidence upon which the ALJ was permitted to rely"). Those consistent opinions certainly amount to substantial evidence to support the ALJ's finding that C.B.S., Jr. experienced "less than marked" limitation in Attending and Completing Tasks.

**3. Health and Physical Well-Being**

In regard to the final domain at issue, the ALJ first described the proper criteria for evaluating limitations:

> This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning. The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. . . .
>
> Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches [sic] or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

(Tr. 25 (citing 20 C.F.R. § 416.926a(l) and Social Security Ruling 09-8p, Title XVI: Determining Childhood Disability – The Functional

Equivalence Domain of "Health and Physical Well-Being," 2009 WL 396030 (Feb. 17, 2009)) (internal citation omitted).)

The ALJ then provided a lengthy explanation for finding "less than marked" limitation (Tr. 25 (underscoring omitted)) in this domain:

> School records show [C.B.S., Jr. was ] in a regular education class and d[id] not have an IEP. He d[id] take medications for ADHD and a seizure disorder. When medicated, [Ms. Grant] noted there [we]re <u>no physical effects</u> and he remain[ed] focused/on task, and stay[ed] in his seat.
>
> Treatment notes from [child neurologist Dr. William H. Hickling] show <u>[C.B.S., Jr.] d[id] have a seizure disorder, which [wa]s under control</u>, as well as ADHD and oppositional defiant disorder, but <u>he clearly d[id] well when he [wa]s compliant with medications</u>.
>
> At a visit with Dr. Gertz in January 2014, [C.B.S., Jr.] was taking [his ADHD medication] and receiving no therapy. <u>He was doing very well on the higher dose of [his ADHD medication]</u>, [his] teacher reported improvement and [Plaintiff] agreed, <u>[C.B.S., Jr. ] had no side effects</u>, his grades [we]re very good, and he [wa]s at or above grade level. Dr. Gertz continued [C.B.S., Jr.] on [his ADHD medication].
>
> On April 25, 2015, [Plaintiff] . . . stated [C.B.S., Jr.] s[aw] his neurologist once a year . . . . She said that his seizures [we]re controlled with medication. He had a seizure [two to three] months ago, but she stated it [wa]s because she missed a dose . . . . She also said that as long as she g[ave] him his medication, he d[id] not have seizures.
>
> On July 9, 2015, [C.B.S., Jr.], accompanied by [Plaintiff], followed up with Dr. Hickling, at which time [Dr. Hickling] noted [C.B.S., Jr.] ha[d] occasional absence seizures. [Plaintiff] indicated she could not remember the last time [C.B.S., Jr.] had one. Dr. Hickling indicated <u>[C.B.S., Jr.] ha[d] not had any seizures in quite some time, his overall health [wa]s good, he play[ed] basketball and football for a team, no other concerns were raised at that visit, he [wa]s growing well, sle[pt] well, and his overall health ha[d] been good</u>. At a February 2016 visit with Dr. Hickling,

> [Plaintiff] reported that school [wa]s going okay, [and] her son [wa]s making A's, B's and one C. <u>He complain[ed] of occasional headache, but otherwise ha[d] been doing well with no recent illnesses and sleeping well. Dr. Hickling indicated that he was pleased that [C.B.S., Jr.] ha[d] well-controlled seizures and made no plans to change his treatment. [Dr. Hickling] noted, "[C.B.S., Jr.] truly has been seizure-free for a year"</u> and [Dr. Hickling] was considering tapering and discontinuing [C.B.S., Jr.'s] medications [in January 2017], but most likely w[ould] not do so until [C.B.S., Jr. wa]s out of school for the summer of 2017.
>
> [Plaintiff] acknowledged at the hearing that <u>[C.B.S., Jr.] d[id] not have seizures as long as he t[ook] his medications</u>, but she d[id] not ensure that he t[ook] them by observing him when taking them.

(Tr. 25-26 (emphasis added) (internal citations and parenthetical omitted).)

As the above-emphasized language makes clear, the ALJ considered the proper criteria in determining that C.B.S., Jr. had "less than marked" limitation in this domain. (Tr. 25 (underscoring omitted).) In spite of Plaintiff's contention that C.B.S., Jr. continues to "suddenly . . . just st[are] off into another zone and hav[e a] seizure" (Docket Entry 10 at 1), the ALJ appropriately noted (1) Ms. Grant's observation that, when on seizure medication, C.B.S., Jr. suffered no physical effects of his seizures (see Tr. 25, 196); (2) Dr. Gertz's opinion that C.B.S., Jr. did very well on his ADHD medication without side effects (see Tr. 26, 318); (3) Dr. Hickling's opinion that C.B.S., Jr. had well-controlled seizures and overall good health (see Tr. 26, 370, 380); and (4) Plaintiff's concession that [C.B.S., Jr.] did not have seizures when he took his seizure medication (see Tr. 26, 52-54). In addition, the ALJ afforded "significant weight" to the opinions

-14-

of the state agency psychological consultants (Tr. 18), who both felt that C.B.S., Jr. had "less than marked" limitations in this domain (Tr. 81, 94).  See, e.g., Adams, 2005 WL 3832408, at *3 n.4 ("[T]wo state-agency psychologists found no limitation or less than marked limitations in these domains . . . .  The [ALJ] was entitled to rely on the medical evidence provided by the state-agency psychologists." (internal citations omitted)).

In short, the ALJ supplied substantial evidence to support his finding of "less than marked" limitation in the domain of Health and Physical Well-Being.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for judgment (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

                                         /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                             **United States Magistrate Judge**

January 6, 2020